In the Matter of the Voluntary Dissolution of The Rogers Construction Company.

John F. Burke, Receiver of The Rogers Construction Company, Appellant; German-American Bank of Tonawanda, N. Y., Respondent.

*Transfer of a claim by an insolvent corporation to secure a prior indebtedness — it is not a violation of section 48 of the Stock Corporation Law when made pursuant to an oral agreement entered into when the corporation was solvent — the secretary of the company may make the oral agreement.*

A written assignment of a judgment, executed by a construction company to a bank as collateral security for the construction company's then existing indebtedness to the bank, at a time when the corporation was insolvent, is not within the condemnation of section 48 of the Stock Corporation Law (Laws of 1890, chap. 564, as amd. by Laws of 1892, chap. 688), prohibiting transfers "when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation," when it appears that the written assignment was executed in pursuance of an oral agreement made at a time when the construction company was not insolvent, by which the bank, in consideration of the construction company's verbal promise to execute the assignment, agreed to and did extend the construction company's existing line of credit and make an additional loan to it.

The fact that the oral agreement was made by the secretary of the construction company does not impair the validity of the written assignment, where it appears that the construction company received the benefit of the oral agreement and that the formal assignment was executed pursuant to a resolution of its board of directors.

McLennan, J., dissented.

Appeal by John F. Burke, receiver of The Rogers Construction Company, from an order of the Supreme Court, made at the Erie

Special Term and entered in the office of the clerk of the county of Erie on the 10th day of February, 1902, confirming the report of a referee awarding to the respondent certain moneys in the hands of the receiver.

*Frank F. Williams* and *P. F. King*, for the appellant.

*Norman D. Fish*, for the respondent.

SPRING, J.:

If I appreciate correctly the situation in this case it involves simply a question of fact. In 1895 and 1896 the Rogers Construction Company was engaged quite extensively in carrying out certain contracts in building an armory, doing construction work for a railroad company and in street paving, etc. It did its banking business with the German-American Bank of Tonawanda, and on the 4th of December, 1895, it was owing that bank $8,500 on promissory notes which fell due upon that date. The secretary of the construction company applied to the bank for an additional loan and it was declined unless security was given as collateral for the existing indebtedness as well as the new loan. A verbal agreement was thereupon made with the bank whereby the construction company agreed to transfer to the bank as general collateral for its indebtedness a claim amounting to about $7,000 against the Buffalo, Kenmore and Tonawanda Railroad Company which was for work which had been performed by the construction company. In consideration of this assignment the bank then loaned to the company $2,000, taking its note therefor and renewed the other indebtedness of $8,500. Subsequently the $2,000 note was paid and additional credit upon its notes was given to the construction company, some of which were paid, but the $8,500 with considerable other indebtedness has never been paid. On April 3, 1896, judgment was recovered by the construction company against the railroad company for $7,538.21 besides costs, and this was subsequently compromised pursuant to an order of the court at the sum of $4,500. In the month of June, 1896, the board of directors of the construction company by formal resolution directed the assignment of the judgment recovered by it against the railroad company, and on the twelfth of September following the written assignment was made.

Prior to the recovery of the judgment the claim was left with Cunneen & Coatsworth, a law firm of the city of Buffalo, for collection, and the transfer of the judgment was made subject to the lien of said firm for services, which has been adjusted by the referee at $1,000, and no appeal is taken from the order entered confirming that part of his report.    On the 30th of September, 1896, the appellant was appointed receiver of said construction company as it was then insolvent, its liabilities largely exceeding its assets.    The bank applied to the Special Term of the Supreme Court by petition, asking that the validity of said assignment be adjudged and that the receiver be directed to pay the balance of the said sum of $4,500 remaining unpaid after the lien of said law firm and the expenses properly chargeable to said fund were deducted.    The receiver appeared and contested the claim of the petitioner.    The matter was referred to a referee who reported in favor of the claim, which report was confirmed by the order appealed from.

With the evidence of the oral agreement before him, the referee, after reciting the formal assignment of this judgment, found : " That said assignment was so made, executed and delivered in pursuance of an oral agreement entered into between the said The Rogers Construction Co. and the said German-American Bank of Tonawanda, N. Y., about the month of December, 1895, and for the purpose of carrying out and rendering effectual said agreement and not otherwise."

The evidence fully sustains this conclusion of the referee.    The secretary of the company, the teller of the bank and Riesterer, its cashier, testified as to this agreement, and Mr. Cunneen testified that he was advised by the officers of the company, before there was any apprehension of its insolvency, that the bank held this claim or judgment by virtue of an oral agreement.

It is the claim of the defendant that this transfer operated as a preferential assignment, and is consequently within the condemnation of section 48 of the Stock Corporation Law (Laws of 1890, chap. 564, as amd. by Laws of 1892, chap. 688) prohibiting such a transfer " when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation."    It will be observed that the two essentials which vitiate an assignment of this kind are

the insolvency or pending insolvency of the corporation and the intent to create a preference.

There is no suggestion that on the 4th day of December, 1895, when this agreement was made, the construction company was in bad straits financially. It was then carrying out its contracts, each of which proved disastrous and resulted in its insolvency during the year 1896, although it continued employing men and paying them into the month of September of that year. That an oral assignment founded on an adequate consideration will be upheld is too well settled to be gainsaid. (*Risley* v. *Phenix Bank of City of New York*, 83 N. Y. 318; *First National Bank* v. *Clark*, 134 id. 368, 373; *Hooker* v. *Eagle Bank of Rochester*, 30 id. 83.)

The fact that the original agreement was made by the secretary of the company is not in this case a defense which can be used to impeach the validity of this transfer. The construction company received the benefit of the agreement by the extension of its credit and the additional loan, the avails of which went into its business. Beyond that, the action of the secretary was ratified by the directors in June following and by the formal assignment, both of which were in recognition of the conduct of the secretary in making the oral agreement referred to.

While transactions of this kind should always be subjected to careful scrutiny, yet they are peculiarly questions of fact. The evidence bearing upon this oral agreement depended not entirely upon the officers of the bank and the construction company, but, as already suggested, it was corroborated by other proof which tended to show quite clearly that the agreement was not made in contemplation of the insolvency of the company nor with any design or intent to secure a preference over other creditors, which is the vice rendering such an agreement invalid. (*Paulding* v. *Chrome Steel Company*, 94 N. Y. 334.)

The order should be affirmed, with costs.

ADAMS, P. J., WILLIAMS and HISCOCK, JJ., concurred; McLENNAN, J., dissented in an opinion.

McLENNAN, J. (dissenting):

It seems to me, upon principle as well as upon authority, that the order appealed from should be reversed. The facts upon which the

order is based, bluntly stated, are as follows: The Rogers Construction Company was a corporation engaged in the general contracting business in the city of North Tonawanda, N. Y. On the 12th day of September, 1896, said company was notoriously insolvent and had been at least from May previous, as appears by the trial balance sheet made at that time, as explained by the evidence. On the 25th day of September, 1896, an action was commenced to dissolve the corporation because of its insolvency, and one Burke was appointed its receiver.

Prior to December, 1895, the corporation had a valid claim against the Buffalo, Kenmore and Tonawanda Electric Railway Company for about $7,000, which had been placed in the hands of its attorneys for collection. Judgment was recovered upon the claim in favor of the construction company on the 3d day of April, 1896, for $7,602.51 damages and costs, and was duly docketed in the office of the clerk of Erie county on that day. The petition alleges and the proof shows that on the said 12th day of September, 1896, the Rogers Construction Company, by an instrument in writing, executed by its president and by its secretary, who was also its treasurer, such judgment was assigned to the petitioner, the German-American Bank of Tonawanda, N. Y. Concededly, if the assignment of the judgment was made at that time and by that instrument, as is alleged in the petition, it was absolutely void under section 48 of the Stock Corporation Law (Laws of 1890, chap. 564, as amd. by Laws of 1892, chap. 688). Proof, however, was given which tends to show, and the petitioner now claims, that the assignment of the claim upon which the judgment was recovered was actually made in December, 1895, when the corporation was solvent; that such assignment was effected by an oral conversation had between a Mr. Crown, who was secretary and treasurer of the construction company, and the cashier of the petitioner bank. The substance of the conversation was that if the bank would advance $2,000 more money to the construction company, Crown, representing it, agreed to assign the claim against the electric railway company to the bank to secure such loan and other indebtedness which was then held by the bank against such construction company, and that the bank advanced the additional $2,000, and that then and there such claim became the property of the bank. It nowhere

appears that Crown had authority to make such an agreement, or to in any manner transfer the property of the corporation of which he happened to be secretary and treasurer. No resolution of the directors of the corporation had been passed directing or authorizing such action upon his part and no custom was shown from which such authority could be inferred. After such pretended oral assignment of the claim suit was brought upon it in the name of the Rogers Construction Company and judgment was recovered in its favor.

There is some evidence tending to show that in June, 1896, nearly six months after the alleged oral agreement was made, and at a time when the construction company was insolvent, the board of directors, by resolution, ratified such oral agreement and authorized the formal assignment to be made, and it was made September twelfth following, as before stated. The transfer of the judgment in question to the petitioner bank must have been made, I take it, either upon the 12th day of September, 1896, when the written assignment was executed, or in December previous, when the oral conversation took place. Concededly, if made in September, 1896, it was void under the provisions of the statute, because at that time the corporation was insolvent. If the conversation took place, as it is claimed, in December, 1895, we think it is entirely ineffectual for the purpose of transferring the property of the corporation to the petitioner bank. We do not believe that a secretary and treasurer of a corporation can orally, without the express authorization of the corporation so to do, and without proof of such custom on his part as would justify the inference of authority, convey to another its choses in action or property.

The case is entirely different from where an officer of a corporation has property in his possession and delivers it to a *bona fide* purchaser. In this case there was nothing of the kind. The officer simply said, the corporation which I represent has a claim ; I transfer it or will transfer it to you. There was no delivery, actual or symbolical ; no writing, no memorandum of the transaction.

It seems to me that if the correct interpretation of section 48 of the Stock Corporation Law is as indicated in the prevailing opinion, it would be quite as well to declare the statute repealed as to spend time in ascertaining its meaning. Of course, after it is ascertained

that a corporation is insolvent, hopelessly so, as in the case at bar, no preference can be given to a favored creditor, but if all that is necessary in order to accomplish that purpose is to prove that at some time, months or a year previous, some officer of the insolvent corporation said to some individual or an officer of some other corporation, the property of the corporation is yours, and such talk is held to be effectual for the purpose of investing the favored creditor with such property, then there is no life or force left in the statute. I am assuming that the conversation actually took place between the treasurer of the construction company and the cashier of the petitioner bank, as stated by them; but if such secret agreement is to be given the force of a valid transfer, not evidenced by any writing not capable of being recorded, what safety is there for those who may deal with and trust a corporation? A person who is asked to give credit to a corporation may satisfy himself that there are no mortgages which are liens upon its property; investigate and ascertain that there are no bills of sale filed; may learn what property is actually in its possession and under its control, and upon the facts ascertained from such investigation give credit, only to find, when the corporation becomes embarrassed, that the property which was in its possession and under its control, all of it perhaps, was orally transferred months before by one of its officers, without any authority even from its board of directors, and that, indeed, the entire assets of the corporation are " swallowed up in victory."

I believe it is the law that a mortgage upon real property may be given secretly; be kept off the record, and that it may be enforced against the mortgagor, regardless of the rights of his other creditors who trusted him, believing that his real estate was unincumbered. I do not believe, however, it has ever before been held that the same rule applies to personal property, and that its application is even broader, to wit, that in such case it is not even necessary that an incumbrance or transfer should be evidenced by a writing; that a bare conversation between the interested parties will suffice. The judgment or claim in question became the property of the petitioner bank either on the 12th day of September, 1896, when the formal assignment was executed and delivered, or in December, 1895, when the secretary and treasurer of the corporation said it belonged to the bank, and the cashier of the bank in effect said

amen; or it never became its property, but continued to belong to the construction company. In September no title could pass, because the corporation was insolvent, and because of the statute which prohibits a corporation from transferring its property and assets under such circumstances. No title could pass in December, because at that time there was no delivery or change of possession, and no writing or memorandum of sale or transfer.

My conclusion is that the judgment in question, and the claim upon which it was based, continued to be the property of the Rogers Construction Company, and was such at the time of its dissolution, and, therefore, that it belongs to the receiver, and should be distributed ratably between the creditors of such corporation.

It follows that the order appealed from should be reversed, with costs.

Order affirmed, with costs.