## FIRST NATIONAL BANK OF SHARON, PENNSYLVANIA, Respondent, v. CITY NATIONAL BANK OF KANSAS CITY, MISSOURI, Appellant.

### Kansas City Court of Appeals, June 8, 1903.

1. **Banks and Banking:** DEPOSIT: NOTICE: BURDEN OF PROOF. S. made his note secured by chattel mortgage to a factor. The factor negotiated the note to F. bank. S. thereafter sold the mortgaged property and deposited the money in C. bank to the credit of its customer, the factor. The bank applied the money to the indebtedness of the factor. *Held*, the burden of proof was on the F. bank to show that S. at the time of the deposit, notified the C. bank that the money was to be applied on S.'s note to the factor.

2. ———: ———: ———: ———: DEPOSIT SLIP. On a review of the evidence it is *held* that F. bank failed in the burden of proof, since, with other circumstances, the witnesses are equal in number and credibility, and the deposit slip states nothing of the application of the money, and S. does not deny receiving a duplicate of such slip, and it appears there was no pass book in the case.

3. ———: ———: CONVERSION: CONSENT. When S. sold the mortgaged cattle he converted them to his own use and the money deposited became subject to the laws governing the relations between a bank and its depositors, and could be applied to the depositor's debt without the latter's consent. (Cases considered.)

4. ———: ———: ANTECEDENT DEBT: CONSIDERATION. If the trustee, in violation of his duty, pays an antecedent debt with the trust fund without the creditor's notice thereof, who receives it as a general payment, the money is freed from the trust and can not be followed by the beneficiary; and this, though an antecedent debt, does not generally constitute a valuable consideration. (Cases considered.)

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED.

*Milton Moore* for appellant.

(1) The evidence does not sustain the allegations of the petition that the money sued for was deposited with the defendant bank in trust for the plaintiff or in trust to pay the holder of the note claimed by plaintiff as the basis of this action. Beyond question the deposit was made by Shinn to the credit of Missouri Live Stock Commission Company. (2) Nor does the evidence show that an agreement was made between Shinn and defendant bank for the benefit of plaintiff or the holder of the note sued on. The evidence shows no contract of any kind with reference to the deposit. None with the bank, because the deposit was to the credit of the commission company. None with the commission company because the deposit was made without its knowledge. (3) The deposit was an ordinary deposit made by Shinn to the credit of Missouri Live Stock Commission Company. (4) When money is deposited in a bank it has the right to use the same as it may. Zane on Banking, sec. 130, p. 204. (5) The deposit by one in the name of another passes the title of the money where it is taken without knowledge of conflicting claims. Boettcher v. Bank, 15 Colo. 16; Wood v. Boynton, 129 Mass. 358. (6) Money deposited to the credit of another is prima facie payment to him, and is a sufficient protection to the bank. Zane on Banking, sec. 134, p. 213; Egbert v. Payne, 99 Penn. 239; Bank v. Ins. Co., 104 U. S. 54. (7) The bank is not bound unless it appears from the evidence that it entered into an agreement to carry out the purposes of the depositor. Boettcher v. Bank, 15 Colo. 16. (8) The mortgagee has no lien on the proceeds of sale of mortgaged property even though

paid on a pre-existing debt. Bennett v. Gustafsen, 54 Iowa 6; Kahler v. Henson, 53 Iowa 698; Harlan v. Ash, 84 Iowa 38-42; Smith v. Bank, 99 Iowa 282; Jones on Chattel Mortgages (4 Ed.), 464. The Missouri doctrine is that in case of sale of mortgaged property in violation of the terms of the instrument, the mortgagee's remedies are replevin or conversion. Bank v. Morris, 125 Mo. 350; Holloway v. Arnold, 92 Mo. 293; Bank v. Metcalf, 40 Mo. App. 494.

· *I. P. Ryland* and *R. E. Ball* for respondent.

(1) The disputed fact as to whether Shinn told the cashier and whether the cashier knew at the time of the deposit that the fund of four thousand dollars was, in fact, the proceeds of cattle covered by the plaintiff's mortgage, is not a material fact, and under the evidence, whatever may be true about that could not change the result. Burnett v. Bank, 38 Mich. 630; Bank v. Ins. Co., 104 U. S. 54; Bank v. Farwell, 58 Fed. 633; Cady v. Bank, 64 N. W. 906; Alter v. Bank, 73 N. W. 667. (2) On the controverted facts, a court of equity will award the fund to the real beneficial owner and will not permit or sanction the commission of such an act as the defendant, City National Bank, has been guilty of. The defendant has parted with nothing on the faith of this deposit. The defendant is not left in any respect in a worse position by denying its arbitrary appropriation of this money. The defendant makes no claim or showing of any right or title to this fund in the commission company, the depositor, to whose credit it was placed. The defendant bank stands absolutely defenseless in law and in conscience. Stoller v. Coates, 88 Mo. 514; Bank v. Gillespie, 137 U. S. 411; Bank v. King, 57 Pa. St. 205; Clemmer v. Bank, 41 N. E. 728; Evangelical Synod v. Schoeneich, 143 Mo. 664; Pundman v. Schoeneich, 144 Mo. 155; Bank v. Brightwell, 148 Mo. 365; Tievnan's Ex. v. Security B. & L. Assoc., 152 Mo. 142; Paul v.

Draper, 158 Mo. 199; Pearson v. Haydel, 90 Mo. App. 262; Meystedt v. Grace, 86 Mo. App. 183. (3) The point made by appellant, based on the dictum of Judge VALLIANT in Seafield v. Bohne, 69 S. W. 1051, has no merit. (4) There can be no reversal except for prejudicial error. R. S. 1899, secs. 659 and 865. (5) In conclusion we recall to the court's attention the remarkable fact that neither in the testimony of the officers of appellant bank, nor in the adroit and voluminous brief filed by the appellant, is there one word tending to show any right, on its part, to the money, or extenuating in any degree its outrageous action in withholding it.

ELLISON, J.—The plaintiff filed its bill in equity wherein it seeks to have a decree against defendant for the sum of four thousand dollars with interest. The trial court entered the decree accordingly and defendant has come here for relief.

In the view which we take of the case it will not be necessary to state in detail several of the points of dispute or contradictions appearing in the evidence. George W. Shinn gave a negotiable note, and mortgage on cattle to secure it, dated April 19, 1901, to the Missouri Live Stock Commission Company for $5,476, due in six months with eight per cent interest from maturity. Shinn retained possession of the cattle. In a few days thereafter the commission company sold and indorsed the note to plaintiff. About a month thereafter Shinn sold the cattle and deposited $4,000 of the proceeds with the defendant bank in the name of the commission company. That company did its banking business with the defendant and its account was overdrawn to near the amount of Shinn's deposit. The company was insolvent and the defendant, claiming to exercise the right of a bank creditor with the account of its depositor, appropriated the sum deposited by Shinn to the discharge of its claim against the commission company. The latter company was notified of the deposit by mail on the

next day after it was made. It remained passive and silent concerning it until about six weeks afterwards, when upon receiving a statement of its general account with defendant, it replied as follows:

"Reporting on your statement of our account from May 1st to June 6th, will say that we note credit of $4,-000 on May 22 against which we have no charge, and a charge of $156.14 on June 6th against which we have no credit. With these exceptions the account is correct."

Plaintiff knew nothing of the sale of the cattle or of the deposit. Plaintiff claims that Shinn notified the defendant's cashier when he made the deposit that it was to pay on his note to the commission company. Defendant denied that it had any notice of such purpose and claims the deposit was made generally without any direction or accompanying statement. This conflict in the testimony relates to a vitally important branch of the case. The burden is on the plaintiff to show that the defendant bank was notified of the specific purpose for which the deposit was intended. Smith v. Bank, 107 Iowa 624.

In view of the fact that the burden of proof is on the plaintiff, we have concluded under all the circumstances shown in evidence, that it has failed to make a case upon which we can find that defendant was notified of the purpose of the deposit. The evidence in behalf of plaintiff consisted of the statement of Shinn that he so informed the cashier at the time the deposit was made and that several days afterwards, when the transaction had become a matter of dispute, the cashier admitted to him and his attorney that he had given the notice. The attorney corroborates Shinn. The cashier denies the notice. He also denies making the admission, and is corroborated in that by the vice-president of the bank. In a few moments after he was said to have made the admission he was told of it and he immediately said he had been misunderstood; that he had not admitted it. Here we have the plaintiff supported by Shinn and his attorney, who is a lawyer of high standing and character.

The defendant is supported by two witnesses unimpeached. In this balance of testimony we turn to the law of the burden of proof which, as we have stated, rests upon the plaintiff, and from that consideration must find that notice, if given, has not been shown. There are some circumstances, however, which favor the view that no notice was given. The deposit was made after banking hours when no one but the cashier and Shinn was present. Shinn was himself a banker. The "deposit slip" made out at the time by the cashier in Shinn's presence said nothing of the deposit being for any purpose. Such slip or ticket is said to be "a note to help the memory." Morse on Banking, sec. 290. The cashier stated that he gave Shinn a duplicate. Shinn does not deny this. It must in reason be true, for the deposit was not put on a pass book and it seems out of accord with business principles that Shinn would have left the bank without taking with him any evidence of the transaction. So the amount went on the books of the bank as a general deposit to the account of the commission company and that company was so notified and it remained silent, without a claim that any specific purpose was directed. In addition to these considerations is the circumstance that at the time of the deposit the note was not yet due for five months.

The money thus deposited having arisen from a sale of the mortgaged property may be assumed to be properly, the money of plaintiff as holder of the note secured by the mortgage. What, then, is the law as applied to the facts thus stated? The authorities are not in full harmony; yet, if viewed from the standpoint of principle, the question is not difficult of solution.

When Shinn sold the cattle his act constituted a conversion to his own use. The money he received for them was a commodity which passes, and may be received, from hand to hand without inquiry as to anybody's claim thereto by all who have no notice of its origin. Shinn could have used it in any way he saw fit,

as for instance, in the payment of any debts he may have owed. No one would for a moment suppose that any creditor of his, thus receiving such money in payment of his claim without notice, could be made to surrender it up to the one from whom it had been converted. Stephens v. Board of Education, 79 N. Y. 183. He deposited this money with the defendant bank to the credit of the commission company and that company was immediately notified of the deposit and made no objection or protest. It thus, unquestionably, accepted the deposit. It then became subject to the law governing the relation between a bank and its depositor. The law fixes that relation to be that of debtor and creditor. 1 Morse on Banking, sec. 289; State v. Reid, 125 Mo. 51; McKeen v. Bank, 74 Mo. App. 281. If the depositor is indebted to the bank, the latter has a lien on the deposit for the debt and may appropriate the deposit to the payment of such debt. Bank v. Schneidermeyer, 62 Mo. App. 179; Muench v. Bank, 11 Mo. App. 144; Bank v. Ins. Co., 104 U. S. 54-71; 2 Morse on Banking, sec. 559. Necessarily, this right of the bank to appropriate the deposit does not depend upon the depositor's consent. For the depositor without the bank's consent has no right to draw out more than the balance which may be in his favor. And so it is said in Bank v. Hughes, 17 Wend. 101: "Between two persons mutually indebted, the balance is the debt."

In Massachusetts the principles we have stated have been applied in cases we consider to be directly in point in the case at bar. The owner of a negotiable promissory note indorsed it in blank and handed it to his attorney for collection. The attorney deposited it in bank for collection without stating for whose account. The bank collected and credited the attorney with it and then applied it in part payment of an indebtedness the attorney owed it. When the owner of the note learned it had been collected he sued the bank for the amount and

it was held that he could not recover.   Wood v. Bank, 129 Mass. 358.

Again, it was held that where a trustee deposited trust funds in bank on his private account, he thereby converted it to his own use, so that the bank, not having notice, may apply it to his indebtedness.   School Dist. v. Bank, 102 Mass. 174.   The court said: "When Tyler deposited in bank the money which he held as treasurer of the school district, and caused it to be credited to his private account without giving any notice that it was not his private property, or making any special agreement in respect to it, he thereby converted it to his own use.   The specific money became the property of the bank, which it might apply to the payment of any money that he then owed it on account, and for the balance of which it would be his debtor."

The cases of Hatch v. Bank, 147 N. Y. 184, and Hutchinson v. Manhattan, 150 N. Y. 250, are likewise authorities in point.   The court in those cases give some prominence to the fact that the depositors had an agreement with the banks giving them some more extended rights over their deposits than might have followed from force of law without any agreement; as, for instance, that funds held by them by deposit or *otherwise*, might be applied to their indebtedness *whether due or not*. But these agreements were a mere incident of fact peculiar to those cases.

An agreement to allow a bank to do what the law, without the agreement, permits it to do, does not affect the force of the rule in a case which only calls for an exercise of rights given by the law without the aid of an agreement.   The case of Smith v. Bank, 107 Iowa 620, is another case we regard as in point in support of the view we have announced.   Though in that case there was an act of consent by the debtor that the bank might appropriate the deposit.   We have, however, already shown that it is not at all necessary to have the depositor's consent.   The law confers the right on the bank.

It has been sometimes suggested that if the .claim for the payment of which the deposit is appropriated is an antecedent debt, there is no consideration to support the appropriation, but the authorities foregoing repudiate that idea and hold that the rule in respect to antecedent debts not being a consideration for an after-transaction, has no application. The case last cited quotes with approval the following from Pomeroy's Eq. Juris., sec. 1048: "If a trustee or other fiduciary person, in violation of his duty, uses trust money to pay an antecedent debt of his own to a creditor, who has no notice of the breach of trust, or that the money is subject to the trust, in such manner that the money is received as a general payment, and not as a distinct and separate fund, then the money becomes free from the trust, and can not be followed by the beneficiary into the hands of the creditor, although, in general, an antecedent debt does not constitute a valuable consideration." And this is the view of the Supreme Court of New York. Justh v. Bank, 56 N. Y. 478; Stephens v. Board of Education, 79 N. Y. 183.

Many of the cases referred to in plaintiff's brief are based upon the fact that the bank in such cases had notice of the claim or interest of the true owner. But authority has been cited which treats the question of the bank having notice of no importance and which hold that, though without notice of the ownership or equities of others, it has no right to appropriate the deposit. The principal of these are the cases of Burnett v. Bank, 38 Mich. 630, and Cady v. Bank, 46 Neb. 756. In the first case the appropriation of the deposit was made by the bank without the order or participation of the depositor, and the court regards that circumstance as affecting its conclusion; saying that if the depositor had consented to the appropriation there might have been room for other considerations. We can not understand how the depositor's assent that the deposit may be applied on his indebtedness can affect the question in the least. The

right in the bank, as before stated, comes through the law and is wholly independent of the depositor's consent. The only action a depositor takes is that of making the deposit. He knows, or will be presumed to know, that his deposit goes to reduce the balance against him if the indebtedness is an overdraft; or, if in some other form, that it may be applied to its payment.

The result of the foregoing calls for a reversal of the judgment, and it is so ordered. All concur.

