ROGERS, Justice.
 

 On October 9, 1933, plaintiff brought suit against the Tangipahoa Bank & Trust Company to recover $2,500, alleging that- on August 14, 1933, he had deposited for collection with the defendant bank a check for the amount sued for. The check was drawn on the Panama Branch of the Chase National Bank.
 

 Plaintiff alleged that in due course the defendant bank collected the amount of the check, but failed to notify plaintiff of its collection, and that he had been unable to ascertain the exact date on which the collection was made. Plaintiff also alleged that on August 23, 1933, the defendant bank, without lawful authority, voluntarily went on a restricted withdrawal basis, and since that date permitted depositors to withdraw only 5 per cent, of their deposits; the bank retaining in its possession 95 per cent, of the amount of all its deposits; that on August 24, 1933, he called upon the defendant bank to ascertain if the check deposited by him on August 14, 1933, had been paid, when he was informed, for the first time, that the amount of the check had been collected and its proceeds in
 
 *750
 
 termingled with the funds of the bank; and that he would be allowed to withdraw only 5 per cent, of the amount. Plaintiff further alleged that he had never instructed the defendant bank as to the disposition of the proceeds of the check; that, when the bank accepted the check for collection, it became plaintiff’s agent for that purpose; and that, when the collection was made, the proceeds of the check did not become the property of the bank, which was without right to withhold them from plaintiff. The prayer of the petition was for Judgment for the amount of the check, for general relief, and for costs.
 

 Shortly after the defendant Tangipahoa Bank & Trust Company had filed its answer, the defendant bank went into voluntary liquidation, and on motion of plaintiff the liquida-, tor and his special assistants were made parties defendant.
 

 On the morning of the trial, the substituted defendants sought to file an exception of no right or cause of action, a plea of estoppel, ■and an amended and supplemental answer, but, on plaintiff’s objection, the trial judge excluded the pleadings, on the general ground that their allegations were inconsistent with the averments of the original answer. The trial judge also refused -to permit defendants to file the excluded pleadings as part of their exceptions to his rulings.
 

 On August 14, 1933, the defendant bank gave plaintiff a deposit slip containing the notation “Coll” opposite the notation “2500.” The slip was signed by C. C. Smith, an employee of .the hank. When plaintiff offered the deposit slip in evidence on the trial of the ease, defendants objected to its admission until plaintiff proved that it was the original deposit slip. The objection was overruled on the ground that the deposit slip spoke for itself.
 

 During the progress of-the trial, defendants also sought to question the witnesses relative to the deposit slip — to show the date of the deposit,' the meaning of abbreviations, the date on which the check was collected, when and under what conditions its proceeds were credited to plaintiff’s account, and, generally, the intent of the parties,; also to show the withdrawals by'plaintiff from his account. But, on plaintiff’s objection, the trial judge refused to permit the questions to be answered, on the specific ground that' defendants could not alter, vary, .or contradict .the terms of the deposit slip, which constituted the. contract between the parties. Defendants also objected to the signing of the judgment as drawn because it was ultra petitionem and, moreover, failed to allow defendants any credit for plaintiff’s withdrawals.
 

 It might be that the trial judge ruled correctly in excluding defendants’ pleadings, but we think he erred in refusing to permit them to he filed in connection with defendants’ exceptions to his rulings. The correctness of the rulings could be determined only by an examination of the documents theim selves. And the defendants’ right to have their pleadings incorporated in the record so as to enable this court to review them could not be denied because the exercise of the right might be barren of result That is a matter which could1 only be tested on appeal when the record would be brought up.
 

 We think the trial judge erred also in holding that a deposit slip was a contract be
 
 *752
 
 tween the plaintiff and the defendant bank and, as such, not subject to explanation or contradiction.
 

 It is’well settled that a deposit slip is a ihere acknowledgment by the bank that the amount named has been received, and' does not purport to embody the contract between the parties. Weisinger v. Bank of Gallatin, 10 Lea (Tenn.) 330; First Nat. Bank v. Clark, 134 N. Y. 368, 32 N. E. 38, 17 L. R. A. 580; Fort v. First Nat. Bank, 82 S. C. 427, 64 S. E. 405; First Nat. Bank v. City Nat. Bank, 102 Mo. App. 357, 76 S. W. 489; Butler v. Farmers’ Nat. Bank, 173 Iowa, 659, 155 N. W. 999; Hastings v. Hugo Nat. Bank, 81 Okl. 189, 197 P. 457, 460; In re Ruskay (C. C. A.) 5 F. (2d) 143.
 

 The legal characteristics of a deposit slip are well set forth by the Court of Appeals of New York in First Nat. Bank v. Clark, page 372 of 134 N. Y., 32 N. E. 38, 39, as follows, viz.; “The use 'of the deposit slip is well understood. It constitutes an acknowledgment that the amount of money named therein has been received. It is a receipt, and nothing more. No promise is made to pay the sum named on return of the paper, nor is it expected, either by the depositor or depositary, that it will ever be presented to the bank again, unless a dispute should arise as to the amount of deposit, in which event it would become important as evidence. It is not intended to furnish evidence that there remains money in the bank to the credit of a depositor, but to furnish evidence, as between depositor and depositary, that on a given date there was deposited the sum named. It may all, or nearly all, be checked out at the moment of making the deposit slip, but the depositor, will not be refused it on that account, for long-established usage has fixed its status in banking as a mere receipt— an acknowledgment that the depositor placed the amount named therein on deposit. It is not proof of liability, and it will not support an action against the bank. Hotchkiss v. Mosher, 48 N. Y. 482; 2 Daniel Neg. Inst. § 1704. Should a suit be brought on the debt, however, it would furnish evidence as to time of deposit and amount; but it has no other use, unless it be to assist in the settlement of a dispute out of court.”
 

 As a deposit slip constitutes a receipt, and nothing more, it is, like all other receipts, only prima facie and not conclusive evidence, and may be explained or contradicted by evidence aliunde. In Hastings v. Hugo Nat. Bank, the rule is announced as follows; “A deposit slip issued by a bank is but prima facie evidence that the bank received the amount of the deposit on the date shown by, the deposit slip. It has the same force and effect as that of any other form of receipt, and is open to explanation as to the conditions surrounding the deposit, and the circumstances under which it was given may be inquired into.” And the rule is stated in Morse Bank & Banking (6th Ed.) vol. 1, § 290, p. 676, in the following words, viz.: “A deposit ticket may be controlled by parol. It is not a contract, hut a memorandum or ‘note to help the memory.’ ”
 

 We find, furthermore, that the terms of the judgment go beyond the prayer of the petition, which is merely the usual demand made by a creditor suing his debtor. The trial judge not only awarded plaintiff a judgment for the amount sued for, but he also adjudged that the defendant bank had received plain
 
 *754
 
 tiff’s check for collection only and not for deposit; that the proceeds of the check were not intermingled with the funds of the bank; and he decreed th'at the sum of $2,500, with interest and costs, be paid out of the funds or property owned or held by the defendant bank, now in liquidation, not, however, in the regular course of the liquidation, but within ten days from the date of the judgment, in default of which the judgment was made ex-ecutory for the full amount against any property or assets of the defendant bank.
 

 For the reasons assigned, the judgment appealed from is annulled, and the case is remanded to the district court to be proceeded with according to law; costs of this appeal to be paid by plaintiff, and all other costs to await the final disposition of the case.